IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **ROBERT LEE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO.  4:18-cv-02422** |
| | § | |
| | § | |
| **ACCENTURE LLP,** | § | |
| | § | |
| **Defendant.** | § | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Robert Lee ("Lee" or "Plaintiff"), Plaintiff in the above-styled and numbered cause, and files this Plaintiff's Original Complaint, complaining of Accenture LLP ("Accenture" or "Defendant"), and for cause of action, would show as follows:

### I.   INTRODUCTION

1.      This action seeks back pay, front pay, compensatory damages, punitive damages, attorneys' fees, expert witness fees, taxable costs of court, and pre-judgment and post-judgment interest for disability discrimination and retaliation suffered by Lee in the course of his employment with Defendant.  Lee complains that he was discriminated against regarding the terms and conditions of his employment because of disability, and that he was subsequently retaliated against for engaging in protected activity.  Lee demands a jury on all issues triable to a jury.

### II.   PARTIES

2.      Lee is a citizen of the United States and is currently a resident of Houston, Texas.

3.     Accenture is an Illinois limited liability partnership with a principal place of business at 161 North Clark Street, Chicago, Illinois 60601.  Defendant also regularly conducts business in this judicial district, including in Houston, Texas.  Defendant's registered agent for service of process is Corporate Creations Network Inc., which may be served at 2425 W. Loop South, #200, Houston, Texas 77027, or wherever the agent may be found.

### III.     JURISDICTION AND VENUE

4.     This action is brought under the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101, *et seq*.

5.     The unlawful employment practices were being committed within the jurisdiction of the United States District Court for the Southern District of Texas–Houston Division, as all of the acts and conduct charged herein occurred in this District.

6.     This Court has jurisdiction over all claims in this action.  The amount in controversy is within the jurisdictional limits of this Court.

### IV.     PROCEDURAL REQUISITES

7.     Lee filed a Charge of Discrimination ("Charge") against Defendant under Charge Number 460-2017-03317 with the U.S. Equal Employment Opportunity Commission ("EEOC") on June 19, 2017.  In his Charge, Lee asserted that Defendant discriminated against him because of his disability.  Specifically, Lee asserted that Defendant removed him from the project to which he had been assigned, completely ignored his requests to place him on another project, and ultimately terminated his employment once it learned of his disability.  Lee further asserted that Defendant discriminated and retaliated against him for requesting an accommodation in connection with his disability.  Lee finally asserted that Defendant discriminated and retaliated against him by refusing to hire him for a position for which he applied following his termination.

8. On April 12, 2018, upon Lee's request, the EEOC issued a Notice of Right to Sue letter, entitling Lee to file an action in this Court.

9. The filing of this lawsuit has been accomplished within ninety (90) days of Lee's receipt of the Notice of Right to Sue letter.

10. All conditions precedent to filing this cause of action have been met.

## V.   FACTS

11. Lee began his employment with Accenture LLP as a Manager in Houston, Texas, in or about August 2015.

12. In early 2016, Lee's immediate supervisor, Dan Cowan, Executive Director, and Lee engaged a client by the name of Aspen Pharmacare Holdings ("Aspen"), which is based out of Johannesburg, South Africa. In discussions with Aspen, it was determined that Lee would travel to Johannesburg in June 2016 and remain there until September 2016 in order to begin the project and support the client.

13. As Lee prepared to travel to Johannesburg for three (3) months, he spoke with Susan Reichardt, his Scheduler, and asked her for 20 hours of paid time off, so that he could take care of various tasks in preparation for his trip, including visiting his doctor and getting a prescription refilled. Lee also mentioned this to Mr. Cowan.

14. On the Thursday before Lee was to depart for Johannesburg, Peggy Krendel, Managing Director (who was Mr. Cowan's superior), telephoned Lee. Ms. Krendel indicated that she wanted to check on Lee because she had heard that he had taken some time off in advance of his trip to Johannesburg. Ms. Krendel then directly asked Lee why he needed medicine, pushing him for details. In response, Lee informed Ms. Krendel that he was HIVpositive and had been for the past 10 years. Ms. Krendel seemed taken aback–if not

offended–by Lee's candid disclosure. She then asked Lee whether he could efficiently do his job with "this condition" and whether he had thought about the impact his medical condition could have "on others." Lee communicated that his medical condition had no impact on his work. Lee shared with Ms. Krendel that he needed to get adequate sleep, and if he did not, he would get chronic fatigue or insomnia. Ms. Krendel responded that if that were Lee's "position," he needed to register his request with Human Resources and request an accommodation. Lee expressed his surprise, given that he was leaving for Johannesburg in three (3) days. Ms. Krendel then stated that she and Lee needed to speak with Mr. Cowan and reiterated that Lee needed to register his "request" with Human Resources. Specifically, Ms. Krendel informed Lee: You need to "formalize your arrangement" and "register your condition."

15.    On the following day, Ms. Krendel sent Lee an email, wherein she stated that she and Mr. Cowan were "concerned," and that Lee needed to speak with Mr. Cowan about his future on the Aspen project. She asked that Lee call Mr. Cowan immediately. Within the next hour or two, Lee emailed Mr. Cowan and cc'd Ms. Krendel. Lee received an email from Ms. Krendel, chastising his for emailing Mr. Cowan (even though she had directed him to do so), noting that Mr. Cowan was sleeping and that Lee needed to be more considerate. Mr. Cowan emailed Lee back around 1 a.m. CT, informing Lee that he should cancel his flight to Johannesburg, as Lee was no longer on the Aspen project. Lee expressed that he was disappointed in reply, but Lee did as he was directed and canceled his flight to Johannesburg.

16.    On the following Monday, Lee emailed both Ms. Krendel and Mr. Cowan, communicating that he was eager to wrap-up the Aspen project and move on to the next project. Ms. Krendel replied, indicating that Lee needed to focus on registering his "condition" with Ms. Reichardt.

4

17. Over the next few months (through at least August 2016), Lee attempted to do what Accenture expected of him in connection with "registering" his HIV-positive status with the company and/or requesting an accommodation, all while Ms. Krendel refused to meet with Lee, and Mr. Cowan refused to speak to/reply to Lee's emails.

18. Lee shared with Ms. Reichardt that he was eager to get back to work. Ms. Reichardt informed Lee that he could not work until he was "cleared to work." Lee responded that he had never had to discuss this issue before. Ms. Reichardt replied: "We're concerned for your health and your colleagues' health." At one point, Ms. Reichardt indicated that some at Accenture believed that Lee needed to take an unpaid leave of absence. (Lee did not take such a leave.) Accenture required Lee's medical providers to provide his medical records and sought to have Lee examined by a company physician. (Lee declined to be seen by Accenture's physician.)

19. While all of this was taking place, Lee made approximately 14 formal requests to work with various clients, but his requests were ignored. On or about September 22, 2016, Lee sent an email to Jillian Jesseau, Employee Relations, and expressed his concern that the formal feedback he had received over the past few weeks/month in comparison to the feedback he had received prior to making an ADA request (*i.e.*, disclosing his HIV-positive status) was, perhaps, retaliation for his filing the accommodation request.

20. On September 26, 2017, Ms. Krendel emailed Lee and scheduled a telephone call for September 27, 2016. During that telephone call, Ms. Krendel terminated Lee's employment effective October 11, 2016. Ms. Krendel indicated that Lee had not been staffed in 90 days– presumably as the reason for his termination. Human Resources representative James Lord was also present on that telephone call.

5

21.     Following that telephone call, Lee reached out to several individuals at Accenture, including Peggy Kostial, Managing Director of Accenture's North America practice; individuals in Human Resources; and others, sharing his belief that his termination was in retaliation for his request for an accommodation in connection with his HIV-positive status and in violation of Accenture's policies.

22.     On or about October 18, 2016, Accenture presented Lee with a Separation Agreement, which provided for a lump-sum payment representing four (4) weeks of Lee's base pay in exchange for a general release of any claims he may have had against Accenture. Although Lee executed the Separation Agreement, Accenture did not pay Lee the full amount to which it agreed to pay him and for which Lee agreed to release his claims. Instead, Accenture deducted over $2,000.00 for an outstanding AMEX balance, despite the fact that much of that balance was attributable to work-related expenses. At no time did Lee authorize Accenture to make such a deduction.

23.     On or about February 7, 2017, Lee applied with Accenture for the position of Capability Network Direct Tax Manager, a position for which he was qualified. Accenture informed Lee by email on February 14, 2017, that it had elected to "pursue other candidates."

24.     At all times, Lee was qualified for the position that he held with Defendant, as well as the position of Capability Network Direct Tax Manager, for which he applied after Defendant terminated his employment.

### VI.     DISABILITY DISCRIMINATION UNDER THE ADAAA

25.     Lee incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

6

26.     Defendant discriminated against Lee in violation of the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA").

27.     Specifically, Defendant subject Lee to different terms and conditions of employment when it removed him from the project to which he had been assigned after he disclosed his disability, as that term is defined under the ADAAA; when it completely ignored Lee's multiple requests to work on other projects following Defendant's removal of Lee from the Aspen project; when Defendant ultimately terminated Lee's employment; and when Defendant failed to hire—or even consider—Lee for the position of Capability Network Direct Tax Manager, for which Lee applied after Defendant terminated his employment.

28.     Defendant perceived or regarded Lee as being disabled, even though he could perform the essential functions of his job, with or without reasonable accommodation.

29.     Defendant's termination of Lee's employment and subjecting Lee to different terms and conditions of employment constitute disability discrimination under the ADAAA, 42 U.S.C. § 12101, *et seq*.

30.     As a result of Defendant's discriminatory actions, Lee has suffered lost wages in the past and future, loss of future earning capacity, emotional pain and suffering, and mental anguish, all of which were caused by Defendant's treatment of Lee.  In all probability, Lee will continue to suffer such damages in the future.

31.     Further, Defendant acted with malice or, in the alternative, with reckless indifference to the federally protected rights of the Lee.

### VII.    RETALIATION UNDER THE ADAAA

32.     Each and every allegation contained in the foregoing paragraphs is realleged as if fully set forth herein.

33. Defendant retaliated against Lee in violation of the ADAAA.

34. Lee engaged in conduct protected under the ADAAA. Specifically, when Lee put Defendant on notice of his medical condition, and when he requested a reasonable accommodation under the ADAAA, Lee engaged in protected conduct under the ADAAA.

35. Lee was subjected to an adverse employment action following his engagement in protected conduct. Specifically, Lee was removed from the project to which he had been assigned; his requests to work on other projects were ignored; formal feedback Lee received following his making an ADA request (*i.e.*, disclosing his HIV-positive status) was negative; Lee was ultimately terminated; and Defendant failed to hire—or even consider—Lee for the position of Capability Network Direct Tax Manager, for which Lee applied after Defendant terminated his employment.

36. There was a causal link between the protected conduct and the adverse employment actions.

## VIII. DAMAGES

37. As a result of Defendant's conduct, Lee seeks the following relief: (1) back pay, including, but not limited to, his salary, bonuses, and benefits; (2) reinstatement, or if reinstatement is deemed not feasible, front pay, including, but not limited to, his salary, bonuses, and benefits; (3) costs of court and attorneys' fees; (4) mental anguish and emotional distress in the past and future; and (5) compensatory damages.

38. Additionally, since Defendant's actions were committed maliciously, willfully, or with reckless indifference to Lee's federally protected rights, Lee is entitled to recover punitive, liquidated, and/or exemplary damages in an amount sufficient to deter Defendant and others similarly situated from this conduct in the future.

### IX.  JURY DEMAND

39.     Lee requests a trial by jury on issues triable by a jury in this case.

### X.  PRAYER

WHEREFORE, Plaintiff Robert Lee respectfully prays that upon final trial hereof, this Court grant him appropriate back pay, including, but not limited to, his salary, bonuses, and benefits; reinstatement, or if reinstatement is deemed not feasible, front pay, including his salary, bonuses, and benefits; mental anguish and emotional distress in the past and the future; compensatory damages; punitive damages as allowed by law; reasonable attorneys' fees both for the trial of this cause and any and all appeals as may be necessary; all expert witness fees incurred in the preparation and prosecution of this action; pre-judgment and post-judgment interest as allowed by law; taxable court costs; and any such additional and further relief that this Court may deem just and proper.

Respectfully submitted,

**SHELLIST | LAZARZ | SLOBIN LLP**

By:  */s/ Daryl J. Sinkule*
DARYL J. SINKULE
State Bar No.: 24037502
Federal ID No.: 34842
dsinkule@eeoc.net
TODD SLOBIN
State Bar No.: 24002953
Federal ID No.: 22701
tslobin@eeoc.net
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile: (713) 621-0993

**ATTORNEYS FOR PLAINTIFF
ROBERT LEE**